UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GREG TAYLOR, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-1155-JD |
| A. BELHUMEUR, | |
| Defendant. | |

OPINION AND ORDER

Greg Taylor, a prisoner without a lawyer, is proceeding in this case against Officer Amber Belhumeur in her individual capacity "for compensatory and punitive damages for permitting him to have a razor blade with which he attempted suicide on June 4, 2019, in violation of the Eighth Amendment[.]" ECF 38 at 3. Taylor filed a motion for summary judgment. ECF 202. Officer Belhumeur filed a response. ECF 225. The court enlarged Taylor's timeline to file a reply until March 10, 2023, but he did not file any reply by the deadline. Officer Belhumeur also filed a motion for summary judgment. ECF 221. Taylor filed a response, and Officer Belhumeur filed a reply. ECF 234, 237. The court will now rule on both summary judgment motions.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine

issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The parties provide evidence showing the following facts: On June 4, 2019, Officer Belhumeur was employed as a correctional officer at Miami Correctional Facility. ECF 223-1 at 1. On that day, Taylor went to Officer Belhumeur's desk and reported he had swallowed thirty razor blades. ECF 232 at 9-11. That was Taylor's first interaction with Officer Belhumeur that day. *Id.* at 9-10. In response, Officer Belhumeur immediately contacted the medical unit. *Id.* at 11. While Officer Belhumeur was on the phone with the medical unit, Taylor stood approximately twenty feet in front of her desk and traded coffee to other inmates in exchange for additional razor blades, which he placed in his pockets. *Id.* at 19-20, 22. Taylor was transported to the medical unit, where he refused an x-ray and stated he wanted to see mental health. *Id.* at 11-12. Taylor informed medical personnel he would cut himself unless he could see mental health, but the medical staff determined he did not require a mental health evaluation.

*Id.* at 12-13. Medical staff returned Taylor to the cellhouse and informed Officer Belhumeur he had refused treatment. ECF 223-1 at 1.

When Taylor arrived back at the cellhouse, he was irate he had not been allowed to see mental health and told Officer Belhumeur he was going to cut himself. ECF 232 at 16. Officer Belhumeur knew Taylor had just been "cleared" by medical and would not have been sent back to the cellhouse if medical considered him a threat to himself. ECF 223-1 at 2. Nevertheless, before placing Taylor back in his cell, she searched the cell to ensure there were no items he could use to harm himself. ECF 232 at 16-17; ECF 223-1 at 2. As a female staff member, Officer Belhumeur was not allowed by policy to search Taylor's person, but she did not believe medical personnel would have returned him to the cellhouse with razor blades on his person. ECF 223-1 at 2. After finding no potentially harmful objects in Taylor's cell, Officer Belhumeur placed Taylor in his cell and told him she would prepare his medications. *Id.* at 3. Several minutes later, she returned and told Taylor he could get his medications. *Id.* She saw Taylor exit his cell, go into the sally port, take a razor blade in his hand, and cut his right arm with the razor blade. *Id.* Taylor had been hiding the razor blade in his pocket when he returned from medical. ECF 232 at 21. Officer Belhumeur immediately called a signal 3000 and Taylor was air-lifted to a hospital for treatment. ECF 223-1 at 3; ECF 232 at 31.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing

3

a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks omitted). Deliberate indifference is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To prevail, the plaintiff must establish that the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756.

"Suicide is a 'serious harm' and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). "In order to be liable under the Eighth Amendment, a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act." *Id.*

Taylor argues the undisputed facts show Officer Belhumeur was deliberately indifferent to a serious risk of suicide because she placed him back in his cell despite knowing he was suicidal and had access to razor blades. ECF 203 at 4-14. Officer Belhumeur argues she was not deliberately indifferent because the undisputed facts show she took reasonable steps to prevent Taylor from attempting suicide, she did not know he had access to a razor blade until after he cut himself, and she immediately requested medical assistance once he cut himself. ECF 222 at 4-11.

4

In order to establish an Eighth Amendment violation, Taylor must provide evidence that Officer Belhumeur (1) knew of a substantial risk he may seek to take his own life and (2) failed to take reasonable steps to prevent him from performing this act. *See Novack ex rel. Turbin*, 226 F.3d at 529. A reasonable jury could conclude Taylor satisfied the first prong, as he provides evidence he told Officer Belhumeur he was suicidal and intended to cut himself. *See Sanville v. McCaughtry*, 266 F.3d 724, 737-38 (7th Cir. 2001) (where a prisoner tells a prison official "that he was suicidal, that alone should have been enough to impute awareness of a substantial risk of suicide") (quotation marks omitted). However, Taylor has not satisfied the second prong, as the undisputed facts show Officer Belhumeur took reasonable steps to prevent Taylor from committing suicide.

Specifically, it is undisputed that, upon learning that Taylor had swallowed razor blades, Officer Belhumeur immediately contacted and had Taylor transported to the medical unit, where he was evaluated by medical staff and returned to the cellhouse after refusing treatment and demanding a mental health evaluation. Taylor argues Officer Belhumeur had a duty to ensure he receive mental health treatment (ECF 203 at 7, 12), but it was the decision of medical staff, not of Officer Belhumeur, not to refer Taylor for a mental health evaluation. *See Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009) ("A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference"). Officer Belhumeur was not deliberately indifferent for sending Taylor to the medical unit and deferring to their treatment decisions.

5

Once Taylor was returned to the cellhouse by medical personnel, the undisputed facts show Officer Belhumeur continued to take reasonable steps to prevent Taylor from committing suicide by placing him back in his cell after searching the cell to ensure he did not have any items to harm himself. Taylor argues that, in addition to searching his cell, Officer Belhumeur should have called for a male correctional officer to come and search his person before returning him to his cell. ECF 234 at 3-4. But Officer Belhumeur attests she did not know Taylor had any razor on his person, and did not believe medical personnel would allow him to return to the cellhouse with a razor on his person. ECF 223-1 at 2-3. Taylor argues Officer Belhumeur should have known he had razors on his person because he had traded for them right in front of her desk, but the fact that he traded for razor blades twenty feet in front of her desk while she was on the phone does not refute her attestation that she did not see him trade for any razor blade. ECF 223-1 at 3. Moreover, Taylor traded for these razor blades *before* he was transported to and from the medical unit, and Officer Belhumeur attests she reasonably believed medical personnel would not allow Taylor to return to the cellhouse with razor blades in his pockets. Thus, because there is no evidence Officer Belhumeur knew Taylor had any razor blade on his person when he returned from the medical unit, her conduct of searching only his cell and not searching his person before returning him to his cell was not deliberately indifferent. *See Duane*, 959 F.2d at 677 (deliberate indifference is "something approaching a total unconcern for a prisoner's welfare" or a "conscious, culpable refusal" to prevent harm); *see also Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir.

6

1997) ("[e]xercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk").

Accordingly, because the undisputed facts show Officer Belhumeur took reasonable steps to prevent Taylor from committing suicide by sending him to the medical unit, deferring to the medical staff's treatment decisions, and searching his cell once he returned to the cellhouse to ensure he did not have any items to harm himself, no reasonable jury could conclude Officer Belhumeur acted with deliberate indifference to a substantial risk of suicide. Summary judgment is warranted in her favor.

For these reasons, the court:

(1) DENIES Taylor's motion for summary judgment (ECF 202);

(2) GRANTS Officer Belhumeur's motion for summary judgment (ECF 221); and

(3) DIRECTS the clerk to enter judgment in favor of Officer Belhumeur and against Greg Taylor and to close this case.

SO ORDERED on March 15, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT